# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

RUTH VILLAREAL,

          Plaintiff,

v.                                   Case No. 21-CV-729

ROCKY KNOLL HEALTH CENTER,

          Defendant.

## ORDER

### 1. Background

In the summer of 2020 defendant Rocky Knoll Health Center, a county-run nursing facility, terminated plaintiff Ruth Villareal, a former nurse at Rocky Knoll, for refusing to comply with its COVID-19 testing policy. (*See* ECF No. 1, ¶¶ 16-17.) On June 14, 2021, Villareal filed a complaint against Rocky Knoll alleging that in terminating her employment Rocky Knoll discriminated against her and failed to accommodate her religious beliefs in violation of Title VII. (*Id.*, ¶¶ 24, 25.) She also claimed wrongful discharge under Wisconsin law. (*Id.*, ¶¶ 38, 39.) Rocky Knoll responded with a motion to dismiss, contending that the "entirety" of Villareal's complaint fails to state a claim

upon which relief can be granted and that both her Title VII and wrongful discharge claims should be dismissed. (ECF No. 5 at 15.)

On November 17, 2021, this court granted Rocky Knoll's motion in part, dismissing Villareal's wrongful discharge claim while allowing her Title VII claim to proceed. (ECF No. 14 at 7.)

Villareal now seeks leave to file an Amended Complaint. (ECF No. 24.) Her proposed Amended Complaint adds three defendants and two new claims to her initial complaint. (*Id.* at 2.) Those three defendants are Katherine Clinton, the "administrator/department head of Rocky Knoll and an employee of Sheboygan County," Dennis Miller, Sheboygan County's Director of Human Resources, and Adam Payne, the Sheboygan County Administrator. (ECF No. 24-1 at 3.) The first additional claim alleges that Rocky Knoll violated the First Amendment's Free Exercise Clause, and the second alleges that Rocky Knoll violated Article I, Section 18—the "Right of Conscience" provision—of the Wisconsin Constitution. (*Id.* at 4.) The motion has been fully briefed and is ready for resolution.[1] All parties have consented to the full jurisdiction of this court. (ECF Nos. 6, 7.)

---

[1] Villareal filed her reply brief on May 25, 2022. (*See* ECF No. 26.) However, Rocky Knoll filed its response brief on May 5, 2022, meaning Villareal's reply brief was due on May 19, 2022. *See* Civil L. R. 7(c) ("For all motions other than those for summary judgment or those brought under Civil L. R. 7(h) (Expedited Non-Dispositive Motion Practice), the moving party may serve a reply memorandum and other papers within 14 days from service of the response memorandum."). Villareal in her reply brief does not argue that her delay was the result of excusable neglect. *See* Fed. R. Civ. P. 6(b)(1)(B). Therefore, this court did not consider Villareal's reply brief in its analysis.

**2.	Applicable Law**

Because Rocky Knoll already answered Villareal's complaint (*see* ECF No. 15) and the deadline for filing amended pleadings has long passed (*see* ECF No. 19), absent Rocky Knoll's written consent Villareal may amend her complaint only with leave of the court. Fed. R. Civ. P. 15(a)(2). "The court should freely give leave when justice so requires." *Id*. In the absence of any apparent or declared reason—such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.—the leave sought should, as the rules require, be "freely given." *Foman v. Davis*, 371 U.S. 178, 182 (1962). "The terms of [Rule 15(a)], however, do not mandate that leave be granted in every case." *Park v. City of Chicago*, 297 F.3d 606, 612 (7th Cir. 2002).

**3.	Analysis**

Villareal argues that filing her "Amended Complaint would serve justice and promote judicial efficiency." (ECF No. 24-1 at 12.) She maintains that "there is no undue delay, bad faith, or dilatory motive," that "there will be no substantial or undue prejudice to [Rocky Knoll]," and that "there will be no futility resulting from [her] Amended Complaint." (*Id*. at 12-13.) Rocky Knoll responds that her proposed Amend Complaint "is completely futile" and that her motion should be denied as a result. (ECF No. 25 at 1.)

A proposed amended complaint is futile if it "would fail to state a claim upon which relief could be granted." *Schroeder v. City of Muskego*, No. 20-CV-1066, 2022 WL 516881, at *3 (E.D. Wis. Feb. 18, 2022) (quoting *Gen. Elec. Cap. Corp. v. Lease Resol. Corp.*, 128 F.3d 1074, 1085 (7th Cir. 1997)). Therefore, determining whether Villareal's proposed amended complaint is futile "calls for the same analysis as if [Rocky Knoll] moved for dismissal under Rule 12(b)(6)" of the Federal Rules of Civil Procedure. *Schroeder*, 2022 WL 516881, at *3 (citing *Gen. Elec. Cap. Corp.*, 128 F.3d at 1085).

To survive a Rule 12(b)(6) motion a complaint must "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. A claim satisfies this pleading standard when its factual allegations "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555-56. The court accepts "all well-pleaded facts as true and constru[es] all inferences in favor of the plaintiff[]." *Gruber v. Creditors' Prot. Serv.*, 742 F.3d 271, 274 (7th Cir. 2014).

### 3.1. The Three Additional Defendants

Villareal names three additional defendants in her proposed Amended Complaint: Katherine Clinton, Dennis Miller, and Adam Payne. (ECF No. 24-2, ¶¶ 5-7.)

She alleges that Clinton is a Rocky Knoll employee, while Miller and Payne work directly for Sheboygan County. (*Id.*)

Villareal argues that the addition of these three individual defendants is not futile because they "were significantly involved in denying [her] religious accommodation request and employment termination." (ECF No. 24-1 at 12.) Rocky Knoll responds that "the proposed additions of the individual defendants is redundant and futile" for three reasons: (1) "individual capacity suits are not authorized under Title VII"; (2) Villareal has "failed to sufficiently allege individual capacity claims against these proposed defendants, and official capacity claims under 42 U.S.C. § 1983 are redundant of the claim against the government entity"; and (3) "even if [Villareal] intended to bring an individual capacity claim against these three proposed defendants, she has failed to allege individual involvement that would subject them to liability." (ECF No. 25 at 3.)

"While Title VII imposes liability on employers, it does not place liability on an employer's agent in his or her individual capacity." *Hauglie v. Apex Pros., LLC*, No. 14-CV-111, 2015 WL 1544732, at *2 (E.D. Wis. Apr. 7, 2015) (citing *Williams v. Banning*, 72 F.3d 552, 555 (7th Cir. 1995)). In other words, an individual cannot be held liable under Title VII unless that individual independently meets Title VII's definition of employer. *See, e.g.*, *Jacobeit v. Rich Twp. High Sch. Dist. 227*, 673 F. Supp. 2d 653, 659 (N.D. Ill. 2009) (interpreting 42 U.S.C. § 2000e-2(a)(1)).

Villareal in her proposed Amended Complaint does not claim that any one of the three additional defendants was her "employer." Even assuming she had, she does not, as Rocky Knoll points out, allege any individual involvement by any of these three defendants that would subject them to liability. (ECF No. 25 at 3, 6.) For example, she does not claim that Katherine Clinton discriminated against her on the basis of her religion or that Dennis Miller violated the Free Exercise Clause in terminating her from Rocky Knoll. Therefore, Villareal's proposed Amended Complaint fails to state a claim against those three individual defendants upon which relief can be granted. Consequently, the proposed addition of those three individual defendants to her complaint is futile and, as a result, her motion for leave to file an amended complaint to add them as defendants is denied.

**3.2. Villareal's Proposed Free Exercise Claim**

In her proposed Amended Complaint Villareal alleges that Rocky Knoll violated the Free Exercise Clause of the First Amendment because, although it was "aware" of her belief "that the exercise of her religion prevents her from submitting to any of the presently available COVID-19 tests," it still required her to submit to COIVD-19 tests to maintain her employment. (ECF No. 24-2, ¶¶ 36-37.)

Villareal argues that her proposed Free Exercise claim is not futile and would survive a motion to dismiss because the "defendants' COVID-19 testing mandate is not neutral and generally applicable" and the "defendants' COVID-19 testing mandate

cannot survive strict scrutiny." (ECF No. 24-1 at 5-6.) Rocky Knoll disagrees, arguing that Villareal's "proposed Free Exercise claim is futile" because "Rocky Knoll's undisputed interest in preventing the spread of COVID-19 is a legitimate government interest and its testing policy is rationally related to stemming the spread of COIVD-19 in its facility." (ECF No. 25 at 7.)

The Free Exercise Clause provides that "Congress shall make no law … prohibiting the free exercise" of religion. U.S. Const. amend. 1. The purpose of the Clause "is to secure religious liberty in the individual by prohibiting any invasions thereof by civil authority." *Sch. Dist. of Abington Twp. v. Schempp*, 374 U.S. 203, 222–23 (1963). In other words, the Clause protects an individual from government action that discriminates against her religious beliefs or that "regulates or prohibits [her] conduct because it is undertaken for religious reasons." *See Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah*, 508 U.S. 520, 532 (1993).

But that protection is not unlimited. Indeed, "the right of free exercise does not relieve an individual of the obligation to comply with a 'valid and neutral law of general applicability on the ground that the law proscribes (or prescribes) conduct that [her] religion prescribes (or proscribes).'" *Emp. Div., Dep't of Hum. Res. of Oregon v. Smith*, 494 U.S. 872, 879 (1990) (citing *United States v. Lee*, 455 U.S. 252, 263, n.3 (1982) (Stevens, J., concurring in judgment)).

Rocky Knoll's COVID-19 testing policy provides that:

> a. All Rocky Knoll staff, contracted vendors, and volunteers working within a two-week time period of testing will be required to test for COVID-19 every two weeks as scheduled or as directed by Sheboygan County Public Health.
>
> b. Rocky Knoll reserves the right to not allow entrance to any staff, contracted vendors, and/or volunteers during the time of a pandemic or any outbreak of disease in the community that is determined to threaten the health and or welfare of our residents or employees.
>
> c. There will be no charge to the employee, contracted vendors, or volunteers for the COVID-19 test.
>
> d. Refusal of testing for Rocky Knoll employees will be considered misconduct and will result in suspension without pay/and or termination. If an employee refuses to be tested he/she will be suspended for 5 days without pay. If the employee chooses to get tested within those five days the employee may return to work. If the employee refuses to get tested after five days, the employee will be terminated. Rocky Knoll reserves the right to deny entry of any contracted vendor or volunteer who does not get tested.
>
> e. Requests for an accommodation based on disability, religion or other applicable protected status must be made in writing to the Rocky Knoll Administrator at least two working days prior to the next scheduled testing date.

(ECF No. 24-6 at 2.) The purpose of the testing policy is "[t]o help prevent and/or manage the possible introduction and/or spread of COVID-19 in the facility and to ensure the safety of all residents and co-workers." (*Id.*)

Rocky Knoll's COVID-19 testing policy is neutral. It does not refer to a religious practice. *See Church of the Lukumi Babalu Aye, Inc.*, 508 U.S. at 533 ("A law lacks facial neutrality if it refers to a religious practice without a secular meaning discernable from the language or context."). Nor is its purpose to suppress "religion or religious

8
Case 2:21-cv-00729-WED   Filed 06/01/22   Page 8 of 12   Document 27

conduct." *Id.* (A law is "not neutral" if its purpose is "the suppression of religion or religious conduct.").

It is also generally applicable: Rocky Knoll's policy does not prohibit religious conduct while permitting other conduct that may undermine its interest in preventing the spread of COVID-19 in its facility and ensuring the safety of its residents and employees. *Cf. Fulton v. City of Philadelphia*, 141 S. Ct. 1868, 1877 (2021).

Because Rocky Knoll's policy is neutral and generally applicable, it is subject to a rational basis review—not strict scrutiny. *See Fulton*, 141 S. Ct. at 1876. Therefore, it would be upheld so long as it is rationally related to a legitimate government interest. *Cf. Illinois Bible Colleges Ass'n v. Anderson*, 870 F.3d 631, 639 (7th Cir. 2017). This would be an "onerous test" for Villareal to overcome—she would have to "to eliminate *any* reasonably conceivable state of facts that could provide a rational basis" for Rocky Knoll's policy. *See Srail v. Vill. of Lisle*, 588 F.3d 940, 946 (7th Cir. 2009) (emphasis added).

Preventing the spread of COVID-19 is, at a minimum, a legitimate government interest. *Cf. Roman Cath. Diocese of Brooklyn v. Cuomo*, 141 S. Ct. 63, 67 (2020). That Rocky Knoll is a "skilled nursing facility" reenforces that it had a legitimate interest in preventing the spread of COVID-19 on its campus. *See, e.g.*, *Does 1-6 v. Mills*, No. 1:21-CV-00242, 2021 WL 4783626, at *12 (D. Me. Oct. 13, 2021), aff'd, 16 F.4th 20 (1st Cir. 2021), cert. denied sub nom. *Does 1-3 v. Mills*, 142 S. Ct. 1112, 212 L. Ed. 2d 9 (2022) ("Stopping the spread of COVID-19 in Maine, and specifically stemming outbreaks in

9

Case 2:21-cv-00729-WED    Filed 06/01/22    Page 9 of 12    Document 27

designated healthcare facilities to protect patients and healthcare workers, is a legitimate government interest."). Villareal does not allege any facts to the contrary. (*See* ECF No. 24-2 at 8-9.)

Likewise, Villareal does not claim that Rocky Knoll lacked a rational basis for enacting its COVID-19 testing policy. (*See* ECF No. 24-2.) Nor does she assert any facts from which the court might infer that Rocky Knoll did not have a rational basis for enacting its COVID-19 testing policy. (*See id.*) In all, even taking as true the facts that Villareal does assert, she has not plausibly shown that she can meet her burden of demonstrating no rational basis for Rocky Knoll's testing policy. *Cf. Halcsik v. Knutson*, No. 20-CV-317, 2022 WL 875273, at *11 (E.D. Wis. Mar. 24, 2022).

As alleged in her proposed Amended Complaint, Villareal's Free Exercise claim fails to state a claim upon which relief can be granted. She has not alleged any facts to suggest that Rocky Knoll lacked a legitimate interest in preventing the spread of COVID-19 in its facility or to suggest that Rocky Knoll did not have a rational basis for enacting its testing policy.

Importantly, even assuming Villareal had alleged those facts, this court would not have reached a different result. Several courts have upheld policies similar to Rocky Knoll's under a rational basis review. *See, e.g.*, *Does 1-6*, 2021 WL 4783626, at *12; *Wise v. Inslee*, No. 2:21-CV-0288, 2022 WL 1243662, at *1 (E.D. Wash. Apr. 27, 2022); *Ciseneroz v. City of Chicago*, No. 21-CV-5818, 2021 WL 5630778, at *1 (N.D. Ill. Dec. 1, 2021). Courts

have upheld those policies even where they were not concerned with preventing the spread of COVID-19 in an environment as vulnerable as a healthcare facility. *See, e.g.*, *Guilfoyle v. Beutner*, No. 2:21-CV-05009, 2021 WL 4594780 (C.D. Cal. Sept. 14, 2021) (upholding a policy requiring that university students be tested for COVID-19). In other words, Villareal's Free Exercise claim as alleged in her proposed Amended Complaint fails to state a plausible claim for relief.

Because Villareal's proposed claim under the Free Exercise Clause fails to state a claim upon which relief can be granted, her proposed addition of that claim to her complaint is futile. Her motion for leave to file an amended complaint to add that claim is denied as a result.

### 3.3. Villareal's Proposed Right of Conscience Claim

In her proposed Amended Complaint Villareal claims that the "Defendants' decision to deny Plaintiff's religious accommodation request and terminate her employment constitutes a substantial burden on Plaintiff's religious exercise; it places substantial pressure on Plaintiff to modify her behavior and violate her religious beliefs." (ECF No. 24-2, ¶ 71.) She also claims that the "Defendants cannot show that the Policy is based upon a compelling state interest or that it cannot be served by a less restrictive alternative." (*Id.*, ¶ 72.) Therefore, according to Villareal, in requiring her to submit to COVID-19 testing, Rocky Knoll violated Article I, Section 18—the Right of Conscience provision—of the Wisconsin Constitution.

Villareal argues that her Right of Conscience claim is not futile and would survive a motion to dismiss because the "[d]efendants' decision to deny [her] religious accommodation request and terminate her employment constitutes a substantial burden on [her] religious exercise," and "[i]t is insufficient to establish a compelling governmental interest in requiring [her] to get tested." (ECF No. 24-1 at 10.) Rocky Knoll responds that Villareal's Right of Conscience claim is futile, arguing that she "cannot recover damages or injunctive relief under the Wisconsin Constitution." (ECF No. 25 at 18.)

The court agrees with Rocky Knoll that Villareal cannot recover damages or seek injunctive relief in federal court for a claim brought under the Wisconsin Constitution. *See Goodvine v. Swiekatowski*, 594 F. Supp. 2d 1049, 1054 (W.D. Wis. 2009). Therefore, Villareal's Right of Conscience claim fails to state a claim upon which relief can be granted. As a result, her proposed addition of that claim to her complaint is futile. Her motion for leave to file an amended complaint to add that claim is denied.

**IT IS THEREFORE ORDERED** that the plaintiff's motion for leave to file an amended complaint (ECF No. 24) is DENIED.

Dated at Milwaukee, Wisconsin this 1st day of June, 2022.

WILLIAM E. DUFFIN
U.S. Magistrate Judge